# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNEAPOLIS

| | |
|---|---|
| **Airborne Athletics, Inc.,** | Civil No. 10-3785 (SRN/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| **Shoot-A-Way, Inc.,** | |
| Defendant. | |

___

David R. Fairbairn, Catherine Shultz and Stuart A. Nelson, Kinney & Lange, PA, 312 South Third Street, Minneapolis, Minnesota 55415, for Plaintiff

Alan W. Kowalchyk, Eric R. Chad and Heather Kliebenstein, Merchant & Gould, PC, 80 South Eighth Street, Suite 3200, Minneapolis, Minnesota 55402, for Defendant

___

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff's Motion in Limine to Exclude New Products from Trial [Doc. No. 122]. For the reasons set forth herein, Plaintiff's motion is denied.

## I.   BACKGROUND

This litigation involves allegations by Plaintiff Airborne Athletics, Inc. ("Airborne") that Defendant Shoot-A-Way, Inc. is infringing one or more claims of U.S. Patent No. 5,776,018 (the "'018 Patent"). The '018 Patent relates to a basketball collection, passing and shot analysis machine. Specifically, Airborne contends that Shoot-A-Way's basketball passing machines known as The Gun (including The Gun 6000 and 8000), in existence prior to the filing of the Complaint on August 31, 2010,

infringe on the '018 Patent.

At issue in this motion is whether evidence involving a recently-disclosed and redesigned Gun may be offered at trial. Shoot-A-Way intends to show the availability of acceptable, non-infringing substitutes during the period of alleged infringement – in the form of the new, recently-disclosed Gun machine – to defeat Airborne's lost profits claims. (Letter of 6/26/12 from H. Kliebenstein to S. Nelson, Ex. 7 to Decl. of Eric Chad [Doc. No. 129-7].)

Airborne argues that the new product was disclosed past the discovery deadline and any evidence regarding the redesigned product should be excluded at trial. The Pretrial Scheduling Order in this case was amended by stipulation on November 18, 2011, extending the close of fact discovery to December 9, 2011. (Order on Stipulation to Amend Pretrial Scheduling Order at 1 [Doc. No. 68].) Magistrate Judge Jeffrey Keyes issued a subsequent order extending the end of expert discovery to March 28, 2012. (Amended Pretrial Scheduling Order at 2 [Doc. No. 83].) The undersigned issued a Trial Notice and Final Pretrial Order on June 12, 2012, setting a trial date for October 29, 2012. (Trial Notice and Pretrial Order at 1 [Doc. No. 117].)

Testimony given by Plaintiff's expert, Dr. Fred P. Smith, at his April 3, 2012 deposition apparently led to the redesign of the Gun. In response to questions from defense counsel at his deposition, Dr. Smith opined that changes in two specific components of the Patent would lead to a non-infringing product:

Q: Okay. Now if those two yellow vertical sleeves – what do you call, just

for common terminology, what do you call those two yellow portions there, do you have a name for them other than parts of the lift frame?

A: You can call them whatever you like, tubes.

Q: Tubes, I was calling them sleeves, but tubes, that's fine. With respect to those two tubes if they were both eliminated from the Gun structure, would it still have a lift frame that corresponds to the claims?

A: If they were both eliminated they would not, because you wouldn't have a lift frame that was slightably [sic] mounted to the vertical support.

***

Q: If you get rid of the red vertical supports would The Gun still infringe claims 22 and 40?

A: No.

(Smith Dep. at 112-13; 121, Ex. 2 to Decl. of Eric Chad [Doc. No. 129-2].) Because Dr. Smith "told Shoot-A-Way what to do to avoid the patent," Shoot-A-Way "immediately did it" after Smith's deposition, designing the new Gun to incorporate the expert's opinion about non-infringement. (Def's Opp'n Mem. at 2 [Doc. No. 128].) Between April 3 and May 9, 2012, Shoot-A-Way avers that it developed the redesigned Gun. (Letter of 8/2/12 from A. Kowalchyk to Judge Nelson [Doc. No. 131].) By May 10, 2012, Shoot-A-Way contends that its newly redesigned Gun, which eliminated the yellow lift frame tubes and the red vertical supports, was on the market for sale. (Def's First Supp'l Resp. to Pl's Req. for Admission, Ex. 3 to Chad Decl. [Doc. No. 129-3]; Letter of 8/2/12 from A. Kowalchyk to Judge Nelson [Doc. No. 131].)

On May 21, 2012, Shoot-A-Way emailed to Airborne four still photos of portions

3

of its redesigned product. (New Product Photos, Ex. 3 to Sixth Decl. of Stuart A. Nelson [Doc. No. 126-3]; Email String Between E. Chad and S. Nelson, Ex. 5 to Chad Decl. [Doc. No. 129-5].) Shoot-A-Way contends that the new product was not disclosed earlier, because it was neither available nor in existence earlier. (Letter of 6/29/12 from E. Chad to Judge Nelson Chad [Doc. No. 121].)

Plaintiff now moves to exclude evidence of Shoot-A-Way's new product from trial because (1) the new product did not exist at the time of the Complaint or by the deadline to amend the Complaint; and (2) the new product was not produced during discovery. (Pl's Mem. at 1 [Doc. No. 124].) At the hearing on the instant motion, counsel for Airborne represented that Airborne will seek damages from 2004 through May 9, 2012. Because the accounting period for Plaintiff's damages ends as of May 9, 2012, Airborne argues that there is no reason to submit evidence of Shoot-A-Way's new design at trial. Further, Airborne contends that if the Court allows Shoot-A-Way to introduce evidence of its new product, Airborne will argue that the new product is, in fact, infringing and therefore, will require discovery regarding the new design. The need for additional discovery will delay trial and add to the expense of this litigation, Airborne contends. (See Second Decl. of Douglas B. Campbell [Doc. No. 125].)

In response, Shoot-A-Way argues that evidence of Shoot-A-Way's current Gun product is vital to its defense to Airborne's lost profits claims and that if Plaintiff asserts such damages, Shoot-A-Way is entitled to submit evidence of the new product.

## II. DISCUSSION

4

### A. Standard of Review

Plaintiff argues that any evidence of the new product should be excluded from trial pursuant to Fed. R. Civ. P. 26(a) because the redesigned Gun was not disclosed until after the close of discovery. Rule 26(a) addresses the timing of a party's discovery disclosures, and Rule 26(e) addresses a party's duty to supplement its previous disclosures and responses. Fed. R. Civ. P. 26(a) & (e). Rule 37(c)(1) provides that the Court must exclude undisclosed evidence at trial unless a party shows that failure to comply with Rule 26(a) or 26(e) was substantially justified or harmless. The Eighth Circuit has set forth four factors that the Court should consider in determining whether a failure to disclose was justified or harmless: (1) the importance of the excluded material; (2) the explanation for failing to comply with the disclosure rules; (3) the potential prejudice from allowing the material to be used at trial; and (4) the availability of a continuance to cure such prejudice. Citizens Bank of Batesville, Arkansas v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994).

### B. The Importance of the Material Sought to Be Excluded

At trial, Airborne intends to seek damages for lost profits. (Complaint at 3, ¶ b [Doc. No. 1].) Lost profit damages are an assessment of actual damages (i.e., the profits the patentee lost due to the infringement). In the event that lost profits cannot be calculated, reasonable royalty damages represent the floor of possible damages. See 35 U.S.C. § 284; Trell v. Marlee Electronics Corp., 912 F.2d 1443, 1445 (Fed. Cir. 1990). To be entitled to recover lost profits, Airborne must prove that there was a reasonable

5

probability that, "but for" the infringement, Airborne would have made the additional profits enjoyed by Shoot-A-Way, the accused infringer. Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1122 (Fed. Cir. 2003). One method to prove lost profits, referred to as the Panduit test, requires proof of the following: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) the patent owner's manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit the patent owner would have made. Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).

Shoot-A-Way asserts that, consistent with Panduit, in a lost profits analysis, an accurate reconstruction of the hypothetical "but for" market should take into account any acceptable, non-infringing alternatives available to the accused infringer. Specifically, Shoot-A-Way contends that evidence of its new product is critical to rebut Airborne's evidence of a hypothetical "but for" market. Shoot-A-Way argues that the technology used in the redesigned Gun was in existence before the finished product was sold and during the damages accounting period. (Letter of 8/2/12 from A. Kowalchyk to Judge Nelson [Doc. No. 131].)

"The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, i.e., the "accounting period." Grain Processing Corp. v. American Maize-Prods., 185 F.3d 1341, 1350-51 (Fed. Cir. 1999). Even an available technology that was not on the market during the accounting period can constitute a non-infringing alternative. Id. However, when an alleged

alternative is not on the market, the court may reasonably infer that it was not available. Id. at 1353.

> The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period. . . . Mere speculation or conclusory assertions will not suffice to overcome the inference. After all, the infringer chose to produce the infringing, rather than noninfringing product. Thus, the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement. Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not.

Id. (citations omitted). Similarly, a "finding that an infringer had to design or invent around the patented technology to develop an alleged substitute weighs against a finding of availability." Micro Chem., 318 F.3d at 1123 (citing Grain Processing, 185 F.3d at 1346).

In Grain Processing, the patent at issue was related to the production of maltodextrin food additives made from starch. 185 F.3d at 1343. In the patent owner's suit over the defendant's fourth iteration of the accused product, the trial court awarded the patent owner damages based on a reasonable royalty, but denied damages for lost profits. Id. at 1347. The trial court denied lost profits because of the presence of an available acceptable non-infringing substitute. The non-infringing substitute had not been actually introduced in the market, but the trial court ruled that it was "available" because the evidence established that it could have been produced during the time of the infringement. Id. at 1347-48. The Federal Circuit affirmed the ruling of the trial court. 185 F.3d at 1356. The court reasoned that "an accurate reconstruction of the

7

hypothetical 'but for' market takes into account any alternatives available to the infringer." Id. at 1351 (citing, e.g., Robert P. Merges, Patent Law 1080 (2d ed. 1997) (noting, "[T]he infringer should have a chance to argue what he or she might have done in the absence of infringement. Obviously, if the defendant is not permitted to present evidence of this ilk, the analysis is quite skewed: only the patentee's 'best case' scenario is presented, rather than a more realistic scenario."); Martin J. Adelman, Patent Perspectives § 5.2[2] (2d ed. 1998) (stating, "[w]here an infringer demonstrates that it could have chosen to market a noninfringing alternative and that it would have done so had it known that it was infringing . . . the sales that it made of the infringing products were not sales that the patentee would otherwise have made. . . . ") The Federal Circuit in Grain Processing explained that proof which only established theoretical availability would not preclude lost profit damages, but proof of availability in fact was sufficient to preclude lost profit damages. See id. at 1355-56.

Plaintiff argues that Shoot-A-Way should be confined to its position, reflected in Shoot-A-Way's earlier answers to Airborne's interrogatories and requests for admission, that it had made changes to its products to improve performance, but, impliedly, had not redesigned its products to avoid an accusation of infringement. (See, e.g., Def's Resp. to Pl's Second Set of Req. for Admission, Req. No. 14, Ex. 4 to Sixth Nelson Decl. [Doc. No. 126-4].) However, Shoot-A-Way's responses to this discovery dodged the issue of acceptable, available non-infringing alternatives in a hypothetical "but for" market, in part, because Airborne did not ask such a direct question. Instead, Shoot-A-Way

8

carefully phrased its responses to Airborne's discovery and, given its explanation for how it came to redesign the new Gun, it appears that its earlier responses to discovery were truthful and accurate at the time.

There is some question as to whether the design-around process occurred inside or outside the infringement period. Shoot-A-Way contends that the product was redesigned between April 3 and May 9, 2012, and was on the market as of May 10, 2012. (Letter of 8/2/12 from A. Kowalchyk to Judge Nelson [Doc. No. 131].) In Grain Processing, it appears that the design-around process occurred outside the infringement period. Whether or not the actual design-around occurred during the infringement period was not the focus of the court's analysis. Rather, the focus of the opinion was on whether the design-around was "available" during the infringing period. Whether the design-around was "available," as that term is analyzed in Grain Processing, is a fact-based inquiry. And unlike Grain Processing, there is no agreement here on whether the design-around itself infringes, and/or whether it would have been acceptable in the hypothetical market. These are all fact questions which must be resolved by the jury.

### C. The Explanation for the Untimely Disclosure

Shoot-A-Way explains that its failure to disclose its new product consistent with the Amended Pretrial Scheduling Order deadlines was due to the fact that, prior to May 10, 2012, Shoot-A-Way had nothing to disclose. Shoot-A-Way contends that the design for the new Gun product did not exist during the discovery phase of this litigation. (See Def's First Supp'l Resp. to Pl's Req. for Admission, Ex. 3 to Chad Decl. [Doc. No. 129-

9

3].) However, assisted by Dr. Smith's opinion on non-infringing components, following Smith's April 2012 deposition, Shoot-A-Way quickly redesigned the Gun, eliminating the components identified as infringing by Dr. Smith.

Shoot-A-Way's disclosure of the new product was indeed late in terms of the discovery deadlines, but it was not very late. The new product was disclosed shortly after the close of discovery, not on the eve of trial, and Shoot-A-Way notified Airborne within a matter of days of when it purportedly redesigned its product and offered it for sale. (New Product Photos, Ex. 3 to Sixth Nelson Decl. [Doc. No. 126-3]; Email String Between E. Chad and S. Nelson, Ex. 5 to Chad Decl. [Doc. No. 129-5].) Shoot-A-Way supplemented its discovery responses to reflect the redesigned Gun (Def's First Supp'l Resp. to Pl's Req. for Admission, Ex. 3 to Chad Decl. [Doc. No. 129-3]), and offered Plaintiff's counsel an opportunity to inspect the product (Email String Between E. Chad and S. Nelson at 1 [Doc. No. 129-5].) Again, given Shoot-A-Way's explanation for how it came to redesign the Gun – based on Dr. Smith's deposition testimony – it did not disclose the redesigned Gun earlier, because it did not exist earlier. "Airborne's assertion that Shoot-A-Way should have done its design work earlier totally ignores that, until Mr. Smith's testimony during expert discovery, Airborne provided no indication as to what, if any design changes, would fall outside Airborne's view of the asserted claims." (Def's Opp'n Mem. at 8 [Doc. No. 128].)

Airborne cites to Apple Inc. v. Samsung Elecs. Co. Ltd., No. C 11-1846 LHK (PSG), 2012 WL 1595784, * 4 (N.D. Cal. May 4, 2012), and Daichii Pharm. Co., Ltd. v.

Apotex, Inc., No. 03-937 (WGB), 2006 WL 2088310, *2, (D. N.J. July 25, 2006), for the proposition that evidence of a design around can be excluded when it is disclosed after the close of discovery. (Pl's Mem. at 7 [Doc. No. 124].)  These cases are factually inapposite, however.  In <u>Apple</u>, the evidence in question had been in the defendant's possession for months and had not been disclosed, in violation of a court order compelling its production.  <u>Apple</u>, 2012 WL 1595784, at *2-3.   Moreover, the defendant offered no explanation for why it could not produce the discovery and why it failed to bring the problem to the court's attention.  <u>Id.</u> at *3.  In <u>Daichii</u>, the plaintiffs moved to exclude evidence submitted by the defendants on the last day of trial.  <u>Daichii</u>, 2006 WL 2088310, at *1.  The evidence in question related to prior art.  The court found that the defendants failed to establish the probative value and relevance of the exhibits.  <u>Id.</u> at *2. This case is quite factually dissimilar, therefore <u>Apple</u> and <u>Daichii</u> do not support Plaintiff's position.   Shoot-A-Way did not possess its redesign information and withhold it.  Rather, it disclosed the redesign to Airborne within days of its development and release.  As noted earlier, the information in question is directly relevant to Plaintiff's lost profits claim.  For all of these reasons, the Court finds that Shoot-A-Way has offered a reasonable explanation for not disclosing its new product to Airborne.

**D.     Potential Prejudice and Availability of a Continuance to Cure Such Prejudice**

Because of the recent disclosure of the new Shoot-A-Way product, there has been no fact discovery regarding the design, development, function, sales or any other aspect of the new product.  (Pl's Mem. at 3 [Doc. No. 124].)  The new product is also not

11

included in any infringement or non-infringement claim charts, nor has there been any expert discovery regarding the new product. (Id.) Airborne also argues that the mere inclusion of this evidence creates financial prejudice caused by delaying the trial and increasing the cost of litigation. (Second Campbell Decl. [Doc. No. 125].) However, Airborne brought this lawsuit and included a claim for lost profits. Although additional discovery is costly to both sides, it is not prejudicial to Airborne alone.

The Court therefore focuses on the extent to which permitting evidence of Shoot-A-Way's redesigned Gun might tactically disadvantage Airborne. In order to avoid any such disadvantage, the Court finds that a continuance would cure the prejudice. Accordingly, the Court finds that Shoot-A-Way's actions in disclosing the existence of its redesigned Gun outside the discovery period do not warrant the exclusion of such evidence. Under Fed. R. Civ. P. 37(c), the failure to disclose the redesigned Gun was substantially justified, particularly as the new Gun did not exist during the discovery period.

The Court will permit additional discovery, for a very limited period. The additional discovery related to Shoot-A-Way's redesign[1] must be completed within four months from the date of this Order. The parties are to meet and confer in order to determine the discovery that is necessary and to agree upon a schedule. To the extent that the parties encounter any disputes related to the additional discovery, they may raise any

---

[1] No future redesigns beyond the redesign which is the subject of this motion will be admitted as evidence in this case.

such concerns with the Magistrate Judge. The Court is mindful of the impact of a four-month delay of the trial on the parties, particularly Airborne, and cautions the parties that the four-month deadline is absolute.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion in Limine to Exclude New Products From Trial [Doc. No. 122] is **DENIED**;

2. Additional discovery related to Shoot-A-Way's new product must be completed within **four months** of the date of this Order, as set forth herein; and

3. The trial is postponed to a date to be set in the future.

Dated: August 21, 2012

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge
